## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| TYRONE DONOVAN JACOBS, | Civil Action |
| Plaintiff, | No. 22-1205 (CPO) (MJS) |
| v. | |
| WARDEN DAVID ORTIZ, et al., | **OPINION & ORDER** |
| Defendants. | |

**O'HEARN, District Judge.**

This matter comes before the Court by way of Plaintiff's Complaint raising claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  The Court has screened[1] the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(a), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit.  The Court concludes, with the following caveats, that dismissal of the entire Complaint is not warranted at this time and will allow the majority of the Complaint to proceed.

This case arises from Plaintiff's incarceration at Federal Correctional Institution Fairton. Plaintiff names Warden David Ortiz and Lieutenant Andujar as Defendants in this matter. (ECF No. 1, at 1, 4.)  According to Plaintiff, while residing at the segregated housing unit, he was arguing with Defendant Andujar on August 18, 2020, regarding Plaintiff's legal mail and affairs. (*Id*. at 5.) Defendant Andujar became angry and announced that "he will be here tomorrow to 'lockin' with [Plaintiff]," meaning to "fight" him. (*Id*.)

---

[1] The Court will accept as true the factual allegations in the Complaint for the purposes of this screening only.  The Court has made no findings as to the veracity of Plaintiff's allegations.

The next day, on August 19, 2020, Plaintiff stopped by the corrections officers' office and told Defendant Andujar that he did not "want [any] problems and to just forget [Plaintiff's] rights." (*Id*. at 6.)  Nevertheless, Defendant Andujar was still angry, and he and three officers handcuffed Plaintiff. (*Id*.)  Plaintiff was aware that a beating was imminent and jumped backwards into the hallway so that he would be on camera. (*Id*.)  Defendant Andujar then dragged Plaintiff back into the cell by his ankles, slammed his head onto the wall, and dragged his head across the wall while screaming, "I will fucking kill you" and spitting on his face. (*Id*.)  Afterwards, Defendant Andujar placed Plaintiff into a shower and told medical staff that Plaintiff was going to kill himself, in order to justify his actions. (*Id*.)

Plaintiff filed the instant Complaint in March of 2022, raising *Bivens* claims against the Defendants.  In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that a person acting under color of federal law caused the deprivation. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006); *Belskis v. Ortiz*, No. 21-10322, 2022 WL 3586383, at *3 (D.N.J. Aug. 22, 2022).

The Court will construe the Complaint as alleging under the Eighth Amendment that Defendant Andujar subjected Plaintiff to cruel and unusual punishment by directly inflicting harm, and that Defendant Ortiz subjected Plaintiff to cruel and unusual punishment by failing to protect Plaintiff.  A prisoner has a direct harm claim, if a federal actor inflicts "unnecessary and wanton pain" that is "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Next, "[a] prisoner has a valid failure-to-protect claim if the prison official shows 'deliberate indifference' to a substantial risk of serious harm to an inmate." *Thomas v. Cumberland*

2

*Cnty.*, 749 F.3d 217, 223 n.4 (3d Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)) (internal quotation marks omitted).

With those principles in mind, it appears that Plaintiff wishes to pursue a supervisory liability claim against the prison's warden, Defendant Ortiz.   As a general rule, however, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior. See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. New York City Dept. Of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel*, 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

In general, there are two ways in which supervisors may be liable for the unconstitutional acts of their subordinates.  First, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).  A policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [the governing] body's officers." *Monell*, 436 U.S. at 690.  A custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id*. at 691.

A plaintiff "must identify a custom or policy . . . and specify what exactly that custom or policy was" to satisfy the pleading standard. *Sheils v. Bucks Cty. Domestic Relations Section*, 921 F. Supp. 2d 396, 417 (E.D. Pa. 2013) (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d

Cir. 2001)) (noting that although this standard typically applies to municipal entities, it "applies with equal force to supervisory liability claims premised on a 'policy, practice, or custom' theory"). Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

Here, Plaintiff states only that Defendant Ortiz, failed to "protect[] inmate[s'] constitutional rights[,] . . . failed to investigate the assault[,] and denied BP-9 relief."[2] (ECF No. 1, at 4.) Plaintiff offers no further allegations. Plaintiff fails to describe how Defendant Ortiz established or maintained any particular policies or customs, or how those policies or customs specifically caused or contributed to his injuries. (*Id*. at 4–6.) Nor does Plaintiff allege that Defendant Ortiz personally directed Defendant Andujar to violate Plaintiff's rights or had knowledge of, and acquiesced in, Defendant Andujar's actions. (*Id*.)

Next, to the extent Plaintiff contends that Defendant Ortiz is liable simply for being a supervisor, the Court disagrees. Once again, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676. In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor. Ultimately, Plaintiff's supervisory liability claim is based on bare conclusions, which are insufficient to state a claim for relief. *Kaplan v. Holder*, No. 14-1740, 2015 WL 1268203, at *4 (D.N.J. Mar. 18, 2015) (citing *Iqbal*, 556 U.S. at 678).

---

[2] A BP-9 is an administrative remedy request form that is part of the Bureau of Prisons' administrative grievance procedure. Inmates address such forms to the warden of their facility.

Consequently, the Court will dismiss without prejudice Plaintiff's Eighth Amendment claim against Defendant Ortiz.

Additionally, to the extent that Plaintiff contends that Defendant Ortiz's denial of his administrative grievance independently violated his rights under the First and Fifth Amendments, the Court will dismiss those claims with prejudice.  Generally, the First Amendment confers a "right to petition the Government for redress of grievances," which traditionally involves access to the courts. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.17 (3d Cir. 2018).  The First Amendment does not, however, "impose any affirmative obligation on the government to listen, to respond or . . . to recognize" a grievance. *E.g.*, *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979); *see also Minnesota State Bd. Community Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications.").

Likewise, there is no First Amendment right to an "administrative grievance process or any particular relief . . . through such process." *Gittens v. Scholtz*, No. 18-2519, 2019 WL 3417091, at *4 (D.N.J. July 29, 2019) (quoting *Horsh v. Clark*, No. 17-316, 2019 WL 1243009, at *5 (W.D. Pa. Mar. 18, 2019) (citing *Jones v. N. C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977))); *see also Snisky v. Ortiz*, No. 17-7731, 2020 WL 2520419, at *4 (D.N.J. May 18, 2020); *Bakhtiari v. Spaulding*, No. 17-16, 2017 WL 2778524, at *14 (M.D. Pa. June 27, 2017).  Similarly, inmates have "no constitutional right to a grievance procedure" under the Fifth Amendment. *See, e.g.*, *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009); *Jones v. United States*, No. 18-13943, 2020 WL 1243916, at *6 (D.N.J. Mar. 16, 2020).  Accordingly, the Court will dismiss with prejudice Plaintiff's claims under the First and Fifth Amendments.

Finally, as a request for relief, Plaintiff seeks his "immediate release from federal custody." (ECF No. 1, at 6.)  Plaintiff cannot, however, pursue his immediate release in this case, as "[s]uch remedies are not available" in a civil complaint.  *E.g.*, *Riley v. Tarantino*, No. 20-18864, 2022 WL 44626, at *4 (D.N.J. Jan. 5, 2022); *Roman v. Tyner*, No. 20-20344, 2021 WL 1589341, at *2 (D.N.J. Apr. 23, 2021); *Slaughter v. Christie*, No. 15-8327, 2016 WL 6804877, at *2 (D.N.J. Nov. 16, 2016).  When a person "is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  Consequently, as Plaintiff can only pursue his release through a federal habeas petition, the Court will dismiss his request for release for lack of jurisdiction.  This dismissal is without prejudice to the filing of a federal habeas petition.

The remainder of the Complaint, *i.e.*, Plaintiff's claims against Defendant Andujar, may proceed.[3]  Accordingly,

IT IS, on this 23rd  day of September 2022,

**ORDERED** that Plaintiff's Eighth Amendment claim against Defendant Ortiz is DISMISSED WITHOUT PREJUDICE; and it is further

**ORDERED** that Plaintiff's claims under the First and Fifth Amendments are DISMISSED WITH PREJUDICE; and it is further

**ORDERED** that Plaintiff's request for release is DISMISSED for lack of jurisdiction, this dismissal is without prejudice to the filing of a federal habeas petition; and it is further

**ORDERED** that the remainder of the Complaint may PROCEED; and it is further

---

[3] The Court is not expressly or implicitly limiting Defendant's right to assert any potential defenses as he sees fit.  Nor is the Court ruling that Plaintiff has established a violation.  Instead, the Court is permitting these claims to go forward beyond screening.

**ORDERED** that the Clerk of the Court shall mail to Plaintiff a transmittal letter explaining the procedure for completing United States Marshal 285 Forms; and it is further

**ORDERED** that Plaintiff shall complete the form for the remaining Defendant and return it to the Clerk of the Court, Mitchell H. Cohen Building & U.S. Courthouse, 4th & Cooper Streets, Camden, NJ 08101; and it is further

**ORDERED** that after Plaintiff sends the completed form to the Clerk of the Court, the Clerk shall issue summons, and the United States Marshal shall serve a copy of the Complaint (ECF No. 1), summons, and this Opinion and Order upon the remaining Defendant pursuant to 28 U.S.C. § 1915(d), with all costs of service advanced by the United States; and it is further

**ORDERED** that the Clerk of the Court shall serve Plaintiff with a copy of this Opinion and Order via regular U.S. mail.


/s/ Christine P. O'Hearn_____
**Christine P. O'Hearn**
**United States District Judge**

7